The first case for argument this morning is 17-9578, Alure Energy v. Iancu. Mr. Arndt, this one for you, Ray. Good morning, Your Honor. May it please the Court. We're here on an appeal from two separate IPR board decisions involving claims of a single patent, the 344 patent. The 344 patent claims relate to a system and method of controlling devices at a house by tracking the locations of the household members by using their mobile devices to provide the location information. The claims accomplish this by determining the relative locations of each user with respect to the site and then comparing those locations and then, based on the comparison, deciding what action should be taken to control the device at the site. The claims also require, claims 1 and 16 in particular, taking into account individual preferences that each user might have as to how the device at the site would be altered such that the home can be conditioned appropriately to the user that's closest to the site. It was this combination that differed over the prior art in the prosecution history, the combination of the comparison and the combination of the individual user preferences. The board here committed legal error with respect to the claim terms comparison and profile as well as claims 9, I'm sorry, 11 and 13. There is also insufficient evidence to support the board's findings as to other terms, including proximity selector. I'd like to turn first to the comparison issue. The board here committed legal error. First, it determined the meaning of the term comparison. They accepted your claim construction. Accepted both parties' claim constructions, correct. It determined that a comparison requires an examination of two or more items to establish similarities and dissimilarities. And the claim tells us what those two or more items that are being compared or examined are, is the location of the relative distances of both mobile devices to the site. So you cobble that together, and the BRI says, I need to take the location of each individual with respect to the site, examine it, and determine similarities and dissimilarities. But the court in its opinion, I'm sorry, the board in its opinion, while saying and acknowledging that that's the BRI, says in its analysis of the prior art, well, the BRI doesn't really require establishing similarities and dissimilarities in all instances. We agree, but it has to be able to establish similarities and dissimilarities in some instances. And it is that feature that's missing from the Yamashita reference. I don't know if this question makes any sense, but if the single variable or single piece of information that's being looked at is location, what's the difference between similarities and dissimilarities? The difference, well, first of all, the Yamashita doesn't compare location. But when you're comparing locations, you have to be able to determine where are they. Where are they with respect to one another? Namely, is one closer to the site? You're focused, as I understand it, in arguing against not so much the board's announced claim construction as its application of the construction when looking at the prior art. As I understand it, you're saying the board dropped either similarities or dissimilarities. It needed to consider both of them. And I just want to understand concretely, what does it mean to consider both when you're talking about location? Well, it means when you're talking about location, and I guess when we're emphasizing the fact that Yamashita, the reference, can't establish similarities and dissimilarities, our point is the fact that they can't determine where a user is and can't determine where one is with respect to one another means that you can't compare their actual locations. So when we talk about Yamashita and the board says that they have messages that— I understood it to be a different point to say, Yamashita, I think by everybody's concession, does not pinpoint latitude and longitude coordinates for each person, but that that's not what is necessary to make the comparison. I had understood you to me being a different argument about this claim construction that having used similarities and dissimilarities in the institution, I guess, announcement of the claim construction, the board then later dropped one of them, and I'm trying to understand what that means. Yes, there's two prongs to the argument. The first is that Yamashita doesn't have the ability to compare, to make a full comparison, to be able to establish likes and dislikes, namely, are the users in the same location or are the users in different locations? That's the similarities and dissimilarities. Namely, the processor is looking at the same time. It's doing comparisons of where each user is with respect to the site. And are they in the same place? Similarities. Or are they in different places? Dissimilarities. If one thinks of it that way, how is one not the absolute mirror image of the other so that there's no reason to talk about similarities and dissimilarities? Are they similar or they're not? But that goes to the second point, which is because Yamashita doesn't... We are not contending that the claims require actual latitude or longitude information, but there has to be sufficient information indicative of where a user is, because the claims require location or location information. There needs to be sufficient information about the user's location transmitted to the processor or transmitted to the system, which is the function or the structure that performs the function of the comparison. And with that location information, the processor can then determine are the users in the same place or the users in a different place? So they look at where they are. And the reason this is important, Your Honor, is the focus of the 344 patent specification is, with respect to the two-user embodiment, is let's take a look at where each user is and let's determine which is closer to the site. And depending upon which user is closer to the site, as an example, it could be a user being further away from the site. That's the schedule or the preferences that we're going to implement to condition the site for that user. And Yamashita doesn't transmit any of that information. It transmits a message, which conceivably can be based on where a user is. Whether the user is within 300 meters or not, right? Yes, and as their expert, what the board relied on to say that Yamashita teaches... a requirement that both of the individuals be transmitting a message to do something. So it determines whether both of those individuals are within 300 meters, right? The system does not, Your Honor. The location information where the user is, there's rules that are embodied solely on the mobile devices. So the example that you gave where when a user is within 300 yards, that's programmed on each individual mobile device. And as their expert acknowledged in Appendix Paragraph 1917, the mobile devices don't communicate with one another, and their location information remains solely on the mobile device. In his declaration, he said that location, this is Dr. Selker in Paragraph 24, or I'm sorry, Paragraph 214 of his declaration, which the board relied on, he said location information was transmitted with the messages. And that's what the board cited to as their basis for why Yamashita taught that limitation of the claim. But that declaration was given before his deposition in the case. And in his deposition, he clarified, is the term I'll use, or conceded that the messages are only sent and the messages do not include any location or any location information. And that's at the Appendix page 1917 with the, I'm sorry, I gave you the prior one wrong, the user's location relative to the site being only on the mobile device is Appendix 1930 to 31. I'm not sure that I understand. If you look at 543, which is Yamashita, I think, in Paragraph 10, beginning around line 22, it talks about imposing a requirement that you have a message from a plurality of mobile terminals, right? So in other words, they both have to be within the 300 meters. I agree, but that information remains solely on the mobile device. The messages are sent from the mobile devices to the control terminal based on the satisfaction of the requirements you just read. And one terminal could send that, or one mobile device could send that message at one time. It would sit resident in the control terminal until the other mobile device at some other point in time sends its message. The lookup table says we have a match, take action. But the system never knows, never knows where each individual is to compare the location because all of that information remains solely on the mobile device. The only thing that's sent from the mobile device to the control terminal is a message. Now, the message is based or can be based on location, but it can also be based on other things. And because of that, because no information is sent, the control terminal not only doesn't know what triggered the message, it could have been distance, it could have been time, it could have been a variety of other things, but the terminal is deciding, is knowing whether the mobile device is within 300 meters or not, right? No, it's not. Because it can't receive the signal if it's not. It receives the message, but the mobile terminal doesn't ever, those control requirements and the passages that they send talk about the control requirements being resident on the mobile device. And the user can set up those control requirements to whatever message requirements that he wants. Those are not transferred to the control terminal. A control terminal doesn't ever know where the user's location is. Let me see if I understand this. The set of rules that govern when the mobile device sends the message, I think you're saying, is not a set of rules that the receiving terminal understands. So when it gets a message, it doesn't know why it's gotten the message. That's exactly right. It doesn't know it was within 300 meters? No, all it gets is a message that says approaching, or late, or whatever message. Okay, but it doesn't get the approaching message unless it's within 300 meters, right? Whatever the user's programmed, if he's programmed it within 300 meters, they would not get it. The control terminal wouldn't receive it. It is a distinction, but the reason that that's important is because the claim requires there to be a comparison of location. And then based on that comparison, it takes some action. And if the mobile terminal never, I'm sorry, the control terminal never knows where the users are, how can it compare their locations? Particularly when the messages are not sent at the same time. They sit resident. Those messages just wait and satisfy a test, and then some action is taken. They're not looking at where the users are. And so it would, to me, be inconsistent with the specification to say that we're looking only for a match when the users arguably would be in the same place. When the entirety of the patent specification, with respect to the mobile device embodiment, is focused on let's find out when the users are in different places to be able to take unique action for the profiles of Claim 1 or the proximity selector of Claim 6 based on differentiation of the user's locations. And I'm going to reserve the remainder of my time for rebuttal. Good morning, Your Honors. May it please the Court. Judge Dyke already mentioned Figure 2 of the Yamashita patent. And just to round out the discussion of that, I think it's also helpful to look at Figure 12, which is on page 547 of the appendix. And Figure 12 is just another illustration of what's going on in Figure 2. We have two mobile devices. Can I just make sure we're looking at the same thing? You're not talking about 547 of the appendix, right? I'm sorry, Your Honor. Page 530 of the appendix. And in Figure 12, Rule B in this table shows us that the system does not turn off the air conditioning until both Terminal A and Terminal B are going away, or in other words, until they are both more than 300 meters away from the house. And so there we have an illustration of both similarities and differences. If there is a difference in the status of Terminal A and Terminal B, in other words, if one has already gone away but one is still in the house, the air conditioner remains on. If they're both the same, if we have a similarity, and they've both gone more than 300 meters away from the house, then the air conditioner turns off. So under the board's claim construction, Figure 12 presents a good illustration of how that works in Yamashita. Dr. Slelker also emphasized that a person of ordinary skill in the yard would view the systems that we're dealing here from the perspective of the system as a whole. These are system claims that we're talking about right now. So it's not just about whether one processor would do this or one processor would know, but we have to look at the whole system. Finally, I would just point out that in the three... I'm sorry. You answered, I guess, the question that I asked before. Does the receiving terminal understand anything about location from the message it gets? I don't think the... I mean, I asked that question in the form of whether the rules that are on the mobile device that say, here's when you send a message, whether any aspect of those rules are on the receiving device, so the receiving device says, oh, I got this message. I look at what the rules are that say, here's why you're getting the message, and it tells me something about location. I agree that the processor on the control terminal probably does not know precisely that, for instance, terminal A is 500 meters away from the house or even that it's 300 meters or 250 meters away. I don't think I care about that. That's why I use anything about location. It does know whether it's within 300 meters or not because it wouldn't get the tripping signal or the signal that it needs to pay attention to if it's not within 300 meters, right? Yes, I think that's the way to describe it, and I think that's why Dr. Selker was saying that we have to look at what's going on, that interaction between both the control terminal and the mobile devices. But as Judge Dyke said, nothing actually happens. The control terminal doesn't know to do anything until the rules have been satisfied. Well, I'm sorry, but maybe I can, let me see if I can create an example. Does Yamashita ever say that it's always or even sometimes a 300-meter rule or might it be a planning-to-come-home-in-two-hours rule that the mobile phone says or the mobile phone uses something completely unrelated to distance to send a message? Yamashita does say that users can set up, can do custom settings. But communicate the settings to the recipient? I don't think there's that much detail in Yamashita, but there is not that much detail in the 344 specification either. And as we noted in our brief, for instance, there are many examples in the 344 specification where the system is doing no more than what Yamashita is doing. For instance, there is a scenario where the temperature isn't adjusted until all users go more than three miles away from the house. There's another scenario where the users participate in a demand-driven energy program. So the settings of the appliances in the house are configured based on the price of energy. And in those situations, the base unit doesn't know anything about the exact location of those mobile devices. It doesn't know any particulars. It does know that it's within 300 meters because it doesn't fall into the approaching category in the standard rule here, unless it's within 300 meters, right? That's absolutely true. And the board pointed out that there is... Yamashita knows whether it's within 300 meters or not within 300 meters. Right. I mean, there's nothing deficient about the fact that Yamashita uses rules. We can see even in the 344 patent that there are rules-based schemes that the claim to mention uses as well. Unless there are any further questions, I would ask that the court affirm. Thank you. Your Honor, in response to the question, and I know I've answered this before, but I want to reiterate it, the control terminal only receives a message. And as Dr. Selker conceded, the message doesn't include anything about location. But it doesn't get the message if it's not within 300 meters. I agree with that, but Claim 1, as an example, requires that the processor is the thing that performs the comparison. And what the processor compares is the location of each device relative to the site. And the processor that they claim exists in Yamashita that performs this quote-unquote comparison is on the control terminal. If the control terminal in Yamashita never receives where each user is relative to the site, the processor can't compare that information, which is why, as you heard counsel say, Dr. Selker says, well, the system knows where everyone is. What does he mean? And we've quoted this in our brief. He means the people, because the mobile devices, which have the location information, don't communicate with one another. And the mobile devices, which have the location information, don't send that to the control terminal. So as he acknowledged, the control terminal never knows which user is closer to the site. And if you can't determine which user is closer to the site, you don't know where they are. So while they receive a message that can be indicative of a person crossing a geofence of 300 meters, as Your Honor indicated also, there are other control requirements, and they're with reference to Figure 10 of Yamashita in Column 16. It talks about it can be linear distance. It can be time. There can be a variety of other things that trigger the messages from the mobile devices to the control terminal. But the control terminal has no insight as to why it's receiving a message. It's simply a simple lookup table that says, I have a message that says this. I have a message that says this. And that's in the multiple mobile terminal. For the single terminal, it just looks for one. And it has no idea where the other user is. But for the two, if it receives both, it only waits for two matching messages. It has no idea where they are. It has no idea what triggered the messages. It just takes action. And that simply can't be the comparison set forth in the claim because this is an unreasonable application of the BRI to say it can be met by a simple matching, particularly in view of the fact that comparison and profiles were the portion with respect to Claim 1 that were added and what the examiner indicated were allowable in the Notice of Allowance. I see my time is up unless there's any further questions. Thank you.